**TIERRA SOL JOINT VENTURE and Samuel & Company, Inc., Appellants,**

v.

**The CITY OF EL PASO, Appellee.**

**No. 08–02–00511–CV.**

Court of Appeals of Texas, El Paso.

Nov. 24, 2004.

Rehearing Overruled Jan. 26, 2005.

---

Robert A. Skipworth, El Paso, for appellants.

Carmen I. Perez, Linebarger Heard Goggan Blair Graham Pena & Sampson, L.L.P., El Paso, for appellee.

Before Panel No. 3: BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from a delinquent tax collection suit. For the reasons stated, we reverse and remand.

## I. *SUMMARY OF THE EVIDENCE*

Appellee, the City of El Paso, filed suit against Appellants, Tierra Sol Joint Venture (the "Joint Venture") and Samuel and Company, Inc., to collect taxes on two parcels of land identified as property # X214–999–000A–4530 ("# 4530") and property # X214–999–000A9625 ("# 9625"). During the trial, the City introduced certified tax statements for property # 4530 and # 9625. The statements reflected delinquent taxes for property # 4530 for the years 1989 through 1995 and for property # 9625 for the years 1990 through 1995.

The Joint Venture was formed in 1981. The purpose of the Joint Venture was to acquire two parcels of properties that are the subject of this suit, # 4530 and # 9625. The Joint Venture was originally composed of James E. Branson, Jr., Walter G. Passero, William J. Morgan, John H. Folmer, and Victor Apodaca, Jr. Branson assigned 10 percent of his interest in the Joint Venture to APCO Investments shortly after the formation. Morgan and Apodaca also sold their interest in the Joint Venture to Passero and Folmer. After these transactions, the Joint Venture consisted of Branson, Passero, Folmer, and APCO. In 1982, APCO transferred its interest in the Joint Venture to Robert C. Samuel. Samuel also acquired Passero's and Folmer's interests in the Joint Venture. These transactions resulted in the Joint Venture being composed of Branson and Samuel.

Branson and Samuel were involved in numerous lawsuits between each other. During the course of these lawsuits, Samuel gave sworn testimony that he considered himself a partner of the Joint Venture since 1982 when he first acquired an interest from APCO. Samuel testified that he was bound by the Joint Venture partnership agreement. Samuel also filed pleadings during the course of the lawsuits stating he was a member of the Joint Venture and asserting his rights as a partner under the Joint Venture agreement. From 1982 through 1996, Samuel admitted that he made statements, either personally or through his attorney, to banks, governmental agencies, and providers of various services that he was a partner or joint venturer, or owned a partnership or joint venture interest in the Joint Venture.

Branson also filed a sworn pleading asserting that Samuel became a member of the Joint Venture pursuant to an assignment of interest in June, 1982. However, Branson testified that he objected to the transfer of interest in the Joint Venture to Samuel and never agreed to admit him as a new party under the partnership agreement. Branson stated he never had any intention of allowing Samuel to become a partner and never entered into an agreement for sharing profits or losses. Branson controlled the books of the Joint Venture and did not allow Samuel access to the books. Branson stated that he and Samuel filed separate tax returns because they could not agree on how to file them. Branson and Samuel settled their differ-

ences in 1996, and Branson assigned his interest in the Joint Venture to Appellant Samuel and Company, Inc.

During the trial, Branson denied that the Joint Venture received notices of delinquency. Samuel never alleged that he did not receive notices of delinquency, but alleged that he was not a partner in the Joint Venture during the years 1982 through 1995.

Vincent Kemendo, the Assistant Commercial of Industrial Property Manager for the Central Appraisal District, testified that the Appraisal District's records listed Samuel as the owner of the properties for the years 1982 through 1995 because it relied on a document that recited a conveyance of the properties in question from APCO to Samuel. Kemendo testified that the Appraisal District relied on other records such as a Notice of Protest filed by Samuel's agents. The protest was for both properties, # 4530 and # 9625, for the year 1989. The Appraisal District's block book also contained handwritten notations changing the address for property # 4530 and property # 9625 from "3900 E. Camelback Road in Phoenix, Arizona" to "5141 N. 40th Street, Suite No. 500, Phoenix, Arizona 85018." Both accounts listed Samuel as the owner. The handwritten notations read, "per R.C. Samuel call in req."

Juan Sandoval, the City Tax Assessor–Collector, testified that the name of the owner who appears on the tax roll is determined by the information the City Tax Office receives from the Appraisal District's certified appraisal rolls. Based on the information on the certified tax rolls, Sandoval testified that the bills for both properties which had been sent to Samuel were not returned to the City. Sandoval stated accounts coded as "returned mail" were listed with two dollar signs ("$$") on the certified tax rolls. The City used this symbol, $$, until the late 1980's. Sandoval testified that neither property at issue was so coded.

Appellants and Samuel filed a counterclaim against the City seeking affirmative relief pursuant to the Declaratory Judgment Act. The City filed Special Exceptions, which the trial court sustained. After a bench trial, the court entered judgment in favor of the City. The trial court, in substance, made the following findings of fact:

1. Tierra Sol Joint Venture owned the parcels identified as # 4530 and # 9625 on January 1st of tax years 1989 through 1995.

2. Robert C. Samuel was a partner in the Tierra Sol Joint Venture at all times during tax years 1982 through 1995.

3. Robert C. Samuel held himself out as a partner in the Tierra Sol Joint Venture since 1981.

4. The City of El Paso sent all tax bills and delinquent tax notices required by law for the property identified as # 4530 to Robert C. Samuel during tax years 1989 through 1995.

5. The City of El Paso sent all tax bills and delinquent tax notices required by law for the property identified as # 9625 to Robert C. Samuel during tax years 1990 through 1995.

The trial court, in substance, made the following conclusions of law:

1. Receipt of the tax bills and delinquent tax notices covering the properties identified as # 4530 and # 9625 by Robert C. Samuel is imputed to the Tierra Sol Joint Venture.

2. Taxes, penalty, and interest in the amount described in the judgment of this Court are due and owing to the City of El Paso.

## II. DISCUSSION

Appellants present three issues on appeal: (1) Was Robert C. Samuel a partner in Tierra Sol Joint Venture as early as 1982 so that notice to him of delinquent taxes would be notice to the joint venture?; (2) did the City of El Paso prove that it mailed the statutorily required delinquent tax notices to the owner?; and (3) did the trial court err in sustaining the City of El Paso's special exceptions and thereby eliminate Tierra Sol Joint Venture's counterclaim for affirmative relief?

### A. Findings of Fact and Conclusions of Law

 A trial court's findings of fact in a bench trial have the same force and dignity as a jury verdict and we review sufficiency challenges to findings of fact by the same standards we apply in reviewing a jury's findings. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). In reviewing the trial court's findings of fact for legal sufficiency of the evidence supporting them, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the legal sufficiency point fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.-El Paso 1992, no writ). When reviewing factual sufficiency points, we review all the evidence in the record, including any evidence contrary to the verdict. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We will set aside the verdict only if the trial court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shocking to the conscience, or clearly demonstrating bias. *Pilkington v. Kornell,* 822 S.W.2d 223, 230–31 (Tex.App.-Dallas 1991,

writ denied). We will not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *F.D.I.C. v. F & A Equip. Leasing,* 854 S.W.2d 681, 684 (Tex.App.-Dallas 1993, no writ). A trial court's conclusions of law are reviewed *de novo* as legal questions. *Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, writ denied). We will follow a trial court's conclusions of law unless they are erroneous as a matter of law. *Id.* at 503.

### 1. The Existence of a Partnership

In Issue No. One, Appellants attack the legal and factual sufficiency of the trial court's finding of fact number two, that Robert C. Samuel was a partner in the Tierra Sol Joint Venture at all times during tax years 1982 through 1995. Under the Texas Revised Partnership Act, a partnership is an association of two or more persons to carry on a business for profit as owners, whether the persons intend to create a partnership and whether the association is called a "partnership," "joint venture," or other name. Tex.Rev.Civ.Stat. Ann. art. 6132b–2.02(a)(Vernon Supp.2004–05). Appellants assert that a partnership consists of an express or implied agreement containing four required elements: (1) a community of interest in the venture; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex. 1997), *citing Coastal Plains Dev. Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 287 (Tex. 1978); *see also* Tex.Rev.Civ.Stat.Ann. art. 6132b–2.03.

 It is undisputed that Samuel had an interest in the Joint Venture. However, there is no evidence of an agreement to

share profits or losses, and there is no evidence of a mutual right of control or management of the enterprise. In fact, Branson testified that he objected to the transfer of interest in the Joint Venture to Samuel and never agreed to admit him as a new party under the partnership agreement. Branson stated he never had any intention of allowing Samuel to become a partner and never entered into an agreement for sharing profits or losses. Branson controlled the books of the Joint Venture and did not allow Samuel access to the books. Branson stated that he and Samuel filed separate tax returns because they could not agree on how to file them.

While the City produced evidence that Samuel held himself out to be a partner in the Joint Venture, both in sworn pleadings and deposition testimony in previous lawsuits, the Texas Supreme Court has held that if there is no evidence of any one element of a partnership, a finding of a partnership cannot be upheld. *See Schlumberger*, 959 S.W.2d at 176. Accordingly, we find there is legally insufficient evidence to support the trial courts finding of fact number two, that Samuel was a partner in the Joint Venture. Issue No. One is sustained.

### 2. Delinquent Tax Notices

■ In 1979, the Legislature passed Senate Bill number 621, which enacted the applicable provisions of the Tax Code.[1] One of these provisions of the newly-enacted Tax Code was section 33.04, entitled "Notice of Delinquency," which became effective January 1, 1982.[2] Since its enactment, this section of the code was amended in 1981, 1985, 1999, and 2001.[3] Following the 1985 amendments, section 33.04 read as follows:

(a) At least once each year the collector for a taxing unit shall deliver a notice of delinquency to each person whose name appears on the current delinquent tax roll. However, the notice need not be delivered if:

(1) a bill for the tax was not mailed pursuant to the authorization provided by Section 31.01(f) of this code; or

(2) the collector does not know and by exercising reasonable diligence cannot determine the delinquent taxpayer's name and address.

(b) In addition to the notice required by Subsection (a) of this section, the tax collector for each taxing unit in each year divisible by five shall deliver by mail a written notice of delinquency to each person who owes a tax that has been delinquent more than one year and whose name and mailing address are known to the collector or can be determined by the exercise of reasonable diligence. He shall state in the notice the amount of the delinquent tax, penalties, and interest due, the description of the property on which the tax was imposed, and the year for which the tax is delinquent. If the person owes delinquent taxes for more than one year or on more than one property, the collector may in-

---

1. Act of May 24, 1979, 66th Leg., R.S., ch. 841, § 1, 1979 Tex.Gen.Laws 2217.

2. *Id.* at § 33.04.

3. Act of May 24, 1979, 66th Leg., R.S., ch. 841, § 33.04, 1979 Tex.Gen.Laws 2217, 2290–91, amended by Act of August 10, 1981, 67th Leg., 1st C.S., ch. 13, § 128, sec. 33.04(c), 1981 Tex.Gen.Laws 117, 168, amended by Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex.Gen.Laws 2600, 2601, amended by Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec. 33.04, 1999 Tex.Gen. Laws 5097, 5101, amended by Act of May 15, 2001, 77th Leg., R.S., ch. 1430, § 11, sec. 33.04, 2001 Tex.Gen.Laws 5109, 5112.

clude all the delinquent taxes the person owes in a single notice.

(c) Penalties and interest on a tax delinquent more than five years or a multiple of five years are cancelled and may not be collected if the collector has not delivered the notice required by Subsection (b) of this section in each year that is divisible by five following the date on which the tax first became delinquent for one year.[4]

The 1985 amendments became effective August 26, 1985, and applied to notices required by subsections (a) and (b) to be given in 1985.[5] Section 33.04 was not amended again until 1999.[6] The 1999 amendment became effective January 1, 2000 [7] and applied only to 33.04(b) notices given in and after 2000.[8] Thus, section 33.04 notices required to be given by the City for the properties at issue were governed by the 1985 version of section 33.04 because the certified tax statements reflected delinquent taxes for property # 4530 for the years 1989 through 1995 and for property # 9625 for the years 1990 through 1995. To reiterate, as stated by subsection 33.04(c), failure by the City to give the required 33.04(b) notices mandated cancellation of penalties and interest on the taxes owed.[9]

It is undisputed that delinquent tax notices were sent to Samuel. Juan Sandoval, the City Tax Assessor–Collector, testified that the bills for both properties which had been sent to Samuel were not returned to the City. The City introduced no evidence that the property owner, Tierra Sol Joint Venture, as found by the court in finding of fact number one, received such notices. Branson testified that the Joint Venture never received any tax deficiency notices after 1982. Given our disposition of Issue No. One, the trial courts conclusion of law number one, that receipt of the tax bills and delinquent tax notices covering the properties identified as # 4530 and # 9625 by Robert C. Samuel is imputed to the Tierra Sol Joint Venture, is erroneous as a matter of law. Likewise, findings of fact number one, number four, and number five are inconsistent.[10] There is no evidence that the property owner, Tierra Sol Joint Venture, received the delinquent tax notices. Issue No. Two is sustained and as such, failure by the City to give the required 33.04(b) notices mandates cancellation of penalties and interest on the taxes owed.

## B. Counterclaim

In Issue No. Three, Appellants argue that the trial court erred in sustaining the

---

**4.** Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex.Gen.Laws 2600, 2601.

**5.** *Id.* at § 2.

**6.** Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec. 33.04, 1999 Tex Gen.Laws 5097, 5101.

**7.** Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 43(c), 1999 Tex.Gen.Laws 5097, 5114.

**8.** Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 45, 1999 Tex.Gen.Laws 5097, 5114.

**9.** Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex.Gen.Laws 2600, 2601.

**10.** In findings of fact number one, number four, and number five, the court found Tierra Sol Joint Venture owned the parcels identified as # 4530 and # 9625 on January 1st of tax years 1989 through 1995; the City of El Paso sent all tax bills and delinquent tax notices required by law for the property identified as # 4530 to Robert C. Samuel during tax years 1989 through 1995; and the City of El Paso sent all tax bills and delinquent tax notices required by law for the property identified as # 9625 to Robert C. Samuel during tax years 1989 through 1995.

City's special exceptions and thereby eliminated Appellants' counterclaim for affirmative relief. Appellants filed a counterclaim against the City seeking to have the moneys paid for years 1982 through 1995 applied only to the taxes owed rather than to the penalties and interest. Appellants argue that this was the only mechanism available which would require the City to "disgorge the money it had paid itself for penalties and interest" for the years in dispute and apply those moneys solely to the principal. Given our disposition of Issue No. Two, we find that the trial court erred in sustaining the City's special exceptions, thereby dismissing Appellants' counterclaim. Because the Court has determined there is no evidence that the Joint Venture received the delinquent tax notices and that the City is not entitled to penalties and interest on the taxes owed for the years 1989–1995 for # 4530 and 1990–1995 for # 9625, Issue No. Three is sustained.

The portion of the judgment awarding penalties and interest is reversed. We remand to the trial court for proceedings not inconsistent with this opinion.