COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

FLOYD THOMAS, § 

§ No. 08-07-00266-CV

Appellant, §

§ Appeal from the

V. §

§ 171st Judicial District Court

§

HAROLD LAYTON, § of El Paso County, Texas

§

Appellee. § (TC# 2005-934)

§

## **O P I N I O N**

Appellant, Floyd Thomas, appeals the trial court's judgment that Appellee, Harold Layton, is entitled to $201,724.80 in damages arising out of their partnership. Mr. Thomas brings this appeal on a single issue that challenges the sufficiency of the evidence supporting this damages award.

In 1989, Mr. Harold Layton opened a plant for chaffhaye, an alfalfa product that is bagged and sold as feed for horses. Mr. Thomas was Mr. Layton's business partner. In 2000, Cimarron Agricultural, Ltd. ("Cimarron") bought the plant, but continued to employ Mr. Layton and Mr. Thomas. There was an agreement between Mr. Layton and Mr. Thomas with Cimarron, that Mr. Layton ran the plant and Mr. Thomas sold the chaffhaye.

In January 2003, Cimarron announced plans to close the plant. Two months later, Mr. Thomas and Mr. Layton bought the business back from Cimarron.

In April 2003, Mr. Thomas and Mr. Layton sold the plant to Mr. Greg Collier, who took over a month later under the name "Pioneer Cattle Company." However, Mr. Collier abandoned

the operation in September 2003. Mr. Layton and Mr. Thomas decided to continue operations, hoping to sell it later on; Mr. Thomas became responsible for sales, while Mr. Layton oversaw the plant's operations.

Mr. Thomas and Mr. Layton stopped operating the plant in December 2003. Then in early 2004, they sold the business to Mr. Steve Rader. After the sale, Mr. Layton did not receive additional revenue from chaffhaye sales, but when Mr. Layton asked for a sales statement from Mr. Thomas, the latter did not respond.

In February 2005, Mr. Layton brought suit for an accounting of revenues and profit derived from chaffhaye sales and a declaratory judgment regarding the sums owed by Mr. Thomas; breach of contract, for Mr. Thomas's alleged failure to sell chaffhaye and deliver sums to Mr. Layton; and breach of fiduciary duty related to the Thomas/Layton partnership. Mr. Thomas then filed a counterclaim asserting that he had been underpaid following the Collier purchase. There was a bench trial.

In June 2007, the trial court entered a judgment in favor of Mr. Layton for net actual damages of $201,724.80. The court's findings of fact and conclusions of law state that Mr. Layton was entitled to recover $239,618.30 based on his breach of contract claim and declaratory action seeking declaratory judgment determining sums Mr. Thomas owed him. The court also determined that Mr. Thomas was entitled to recover $37,893.50 from Mr. Layton on his breach of contract counterclaim.

The court's findings of fact state that Mr. Thomas was the business's managing partner, and thus he owed a duty to keep an accurate account of his transactions with the partnership. The court concluded that Mr. Thomas failed to keep an accurate account of his transactions with the

partnership, and thus all doubts in respect to particular items had to be resolved against him on accounting.

In Issue One, Mr. Thomas challenges the court's determination that Mr. Layton was entitled to recover $239,618.30 based on his breach of contract claim and declaratory action. This was based on its determination that Mr. Thomas sold 127,500 bags of chaffhaye. Mr. Thomas argues there was factually insufficient evidence to support the fact that he sold that much. He also complains that there was factually insufficient evidence to support the trial court's disallowance of certain manufacturing expenses.

In an appeal from a bench trial, a trial court's findings of fact "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). A trial court's findings of fact may be reviewed for factual sufficiency under the same standard that is applied in reviewing evidence to support a jury's answer. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When findings of fact are filed and unchallenged, they are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). In determining if a trial court's findings of fact were factually sufficient, we review all evidence in the record, including evidence contrary to the verdict. *Tierra Sol Joint Venture v. City of El Paso*, 155 S.W.3d 503, 507 (Tex.App.--El Paso 2004, pet. denied). We may set aside the verdict only if the trial court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *Tierra Sol Joint Venture*, 155 S.W.3d at 507. We may not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *Id*. When reviewing the factual

sufficiency of the evidence supporting an adverse finding upon which the party did not have the burden of proof, the appellant must show that the evidence is insufficient to support the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). When appealing the factual sufficiency of the evidence supporting an adverse finding on which the party had the burden of proof, the appellant must show that the adverse finding is against the great weight and preponderance of the evidence. *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 620-21 (Tex. 2004).

A managing partner bears the burden to "dispel all doubts concerning his conduct toward the partnership or the other partners, and if he is unable to carry this burden all doubts will ordinarily be resolved against him." *Conrad v. Judson*, 465 S.W.2d 819, 828 (Tex.Civ.App.-- Dallas 1971, writ ref'd n.r.e.). The managing partner owes the duty to keep an accurate account of his transactions with or for the partnership. *Id*. If he fails to do so, all doubts with respect to particular items will ordinarily be resolved against him on an accounting. *Id*. Moreover, any doubts regarding the validity of credits he claims must be resolved against him. *Id*.

Mr. Thomas first challenges the trial court's Findings of Fact Numbers Six, Seven, and Nine, the attached Exhibit A, as well as the resulting judgment, and argues that the evidence was factually insufficient to show Mr. Thomas sold 127,500 bags of chaffhaye and kept the sales proceeds. Specifically, he argues that Mr. Layton testified inconsistently regarding the number of bags produced during the four months of partnership. He claims Mr. Layton testified inconsistently as to whether his figure of 123,000 bags of Number One chaffhaye comprised of 20,000 bags acquired from Cimarron and 103,000 bags manufactured by the partnership; or 40,000 bags acquired from Cimarron and 83,000 bags manufactured by the partnership. Mr. Thomas also argues that the 127,500 figure did not account for the bags that remained in

inventory and were transferred to Mr. Rader when he acquired the partnership.

Findings of Fact Number Six provided:

Based on the foregoing actions taken by each of the parties, the Court made a determination as to offsets and credits that each party is entitled to. Exhibits A & B are the Court's worksheets. Exhibit C is Defendant's account of expenses. Attached to Exhibit C, is the Court's tabulations of allowed manufacturing expenses. The Court disallowed all expenses after January 30, 2004 because Railey [sic] took over the operation of the chaffhaye plant the following day.

The court found in Findings of Fact Number Seven that:

After allowing all offsets and credits, and after allowing Defendant reasonable expenses of the partnership, Plaintiff is entitled to recover damages from the Defendant in the amount of $239,618.30.

Findings of Fact Number Nine states:

Floyd Thomas is entitled to recover from Harold Layton total damages in the amount of $37,893.50. After offsetting the amount of the reimbursement awarded to Defendant, judgment should be entered in favor of Plaintiff for the net damages amount of $201,724.80.

Exhibit A attached to the trial court's Findings of Fact and Conclusions of Law shows the court determined that Mr. Layton is entitled to recover $239,618.30 in damages from Mr. Thomas based on the fact that Mr. Thomas sold 123,000 bags of Number One chaffhaye and 4,000/5,000 bags of Number Two chaffhaye, which totals 127,000 bags of chaffhaye.

At trial, Mr. Layton testified that after September 2003, the chaffhaye plant had an inventory of 120,000 Number One bags for sale. He testified that 40,000 of those bags constituted inventory left over from when they reacquired the plant from Mr. Collier, and after four months of operation, they produced 83,000 bags of chaffhaye. At one point during trial, Mr. Thomas's counsel asked Mr. Layton, "if in fact the record shows that you bought 20,000

bags of inventory from Cimarron, then you would have manufactured 103,000 to get to this figure here?" Mr. Layton answered "right."

Our review of the evidence shows that Mr. Layton never testified that the 127,500 figure comprised of 20,000 bags acquired from Cimarron and 103,000 bags manufactured by the partnership. Instead, these numbers were the result of a hypothetical question Mr. Thomas's counsel had posed to Mr. Layton. Thus, Mr. Thomas's contention regarding Mr. Layton's alleged inconsistent testimony regarding the number of bags must fail.

Mr. Geronimo Archunde, who acted as the plant manager under both Mr. Collier and the Thomas/Layton partnership, testified that from September 2003 through the first of 2004, the business produced 123,000 Number One bags and 5,000 Number Two bags. Mr. Archunde further testified that the plant maintained daily production reports, and that the production figures could be confirmed by those reports, which he claimed to be in Mr. Thomas's possession. However, Mr. Thomas first testified that he did not receive the production reports but then testified that he does not remember if he had the faxed copies of such reports. Mr. Thomas also did not account for 1,071 bags of the 2,960 that he had sold at Tripol, Inc., in 2004. Finally, Mr. Thomas testified that he was responsible for accounting for the money from the partnership's operations as the managing partner of the partnership.

The evidence shows Mr. Thomas was the managing partner of the business, and he failed to account to the partnership for each transaction, a duty he owed to the partnership as the managing partner. *See Conrad*, 465 S.W.2d at 828. Because he failed to keep an accurate accounting, all doubts must be resolved against him. *See id*. Thus, any factual sufficiency argument, including the argument that the 127,000 figure did not account for the bags sold to

Mr. Rader, fails. *See Conrad*, 465 S.W.2d at 828. The trial court's determination that Mr. Thomas sold 127,500 bags of chaffhaye and kept the sales proceeds was not against the great weight and preponderance of the evidence. *See Tierra Sol Joint Venture*, 155 S.W.3d at 507.

Mr. Thomas next challenges the trial court's Findings of Fact Numbers Six, Seven, and Nine, the attached Exhibit A, as well as the resulting judgment, by arguing that the evidence was factually insufficient to support the court's disallowance of certain manufacturing expenses in calculating the damages award to Mr. Layton. More specifically, he argues the trial court erred in concluding that all expenses incurred after January 30, 2004 were disallowed because Mr. Rader took over the plant's operation the following day. He argues that he should have been allowed expenses for payments he made after January 30, 2004 for electricity, maintenance or repair of equipment, a quarterly payment to the Texas Workforce Commission, and a payment made before January 30, 2004 to Carlson Systems for bags allegedly delivered to the plant. Mr. Thomas contends that he had to stay on for about two or three months after Mr. Rader took over the business. He claims that he paid partnership expenses during this period because accounts receivable that had been incurred while the partnership was running the plant continued to come in, and he continued to deal with customer satisfaction issues arising from the partnership's sales. Mr. Thomas also pointed to the contract the parties had made with Mr. Rader, which indicated that Mr. Rader assumed liability for all obligations and liabilities incurred after the closing date in April 2004.

At trial, in response to the question of whether Mr. Rader took charge of the plant after January 30, 2004, and gained possession of it, Mr. Thomas testified, "I guess he had." Although the contract with Mr. Rader indicated April 6, 2004 as the closing date, the record shows that

Mr. Rader took possession of the plant and began to run it in February 2004.

Further, despite Mr. Thomas's claims that the disallowed expenses constituted the partnership's expenses, he did not explicitly state or establish that they were the partnership's expenses at trial. With respect to the specific payments he made after January 30, 2004 for electricity, maintenance or repair of equipment, and a quarterly payment to the Texas Workforce Commission, he did not provide any testimony at trial to establish that those expenses were incurred in connection with the partnership's business. As such, all doubts regarding the validity of these expenses are resolved against him because he was the managing partner of the business. Accordingly, he is not entitled to said expenses. *See Conrad*, 465 S.W.2d at 828.

Ms. Candace Archunde first worked for Mr. Layton under Layton Farms for his plant, and when the plant returned to the Thomas/Layton partnership, she handled bookkeeping, payroll, and product shipping for the partnership. She testified that with regard to the payment made before January 30, 2004, to Carlson Systems for bags allegedly delivered to the plant, Carlson Systems did not deliver any chaffhaye bags to the plant after September 2003. At first, Ms. Archunde testified that the purchase of bags for the plant would not have been necessary because the bags Mr. Layton and Pioneer Cattle Company had purchased previously were still available. However, she later testified that she did not know who purchased those bags. Mr. Layton testified that he did not believe Carlson Systems delivered any bags to the plant. He also testified that the partnership used bags indicating the name "Pioneer," the name of Mr. Collier's operation, and those bags were enough to meet the operation's needs. In contrast, Mr. Thomas testified that there were no bags, and he had to order and pay for the chaffhaye bags. The evidence also contains an invoice from Carlson Systems for two types of bags, dated

October 17, 2003, which indicates an order date of September 16, 2003, and a shipment date of October 8, 2003.

Again, because Mr. Thomas was the managing partner of the business, he had the burden to establish that the disallowed expenses were the partnership's expenses in order to be entitled to them. *See Conrad*, 465 S.W.2d at 828. Although there is some contradictory evidence in the record regarding the payment to Carlson Systems for bags allegedly delivered to the plant, we conclude that the trial court's disallowance of the aforementioned manufacturing expenses was not against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *See Tierra Sol Joint Venture*, 155 S.W.3d at 507.

Issue One is overruled and the trial court's judgment is affirmed.

March 17, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J. and Antcliff, Judge
Antcliff, Judge (Sitting by Assignment)