**Doyce Joe YOUNG, Individually and as Independent Executor of The Estate of Janette S. Young, Deceased and as Trustee of The Doyce Joe Young and Janette S. Young Revocable Living Trust, et. al., Appellants,**

v.

**Gene and Lynn GUMFORY, Appellees.**

No. 05–08–00636–CV.

Court of Appeals of Texas, Dallas.

Aug. 4, 2010.

Rehearing Overruled Oct. 12, 2010.

Edward M. Edson, Clint A. Corrie, Beirne Maynard & Parsons, LLP, Dallas, TX, for Appellants.

Steven D. Goldston, Kenneth B. Chaiken, Chaiken and Chaiken, P.C., Dallas, TX, for Appellees.

Before Justices MARTIN RICHTER, LANG–MIERS, and MYERS.

## OPINION

Opinion By Justice MARTIN RICHTER.

This case arises out of a $10,000 discrepancy in the amount required to prepay a promissory note secured by a deed of trust. After protracted and contentious litigation that included the consolidation of suits in two counties, the appointment of an auditor, claims against the attorneys, sanctions, two motions for summary judgment, interpleader, and a bench trial, the trial court concluded appellants Doyce Joe Young, Individually and as Independent Executor of the Estate of Janette S. Young, Deceased and as Trustee of the Doyce Joe Young and Janette S. Young Revocable Living Trust ("Young") breached the contract with Gene and Lynn Gumfory ("Gumfory") by, *inter alia,* rejecting tenders of prepayment on the promissory note. Judgment was entered in favor of Gumfory awarding damages against Young and attorney's fees, jointly and severally against Young and his attorney Edward Edson, Individually and Edward M. Edson, P.C. ("Edson").

In five issues on appeal, Young contends the trial court erred in interpreting the promissory note's prepayment provisions, the evidence is insufficient to support the court's legal and factual findings, there is insufficient evidence to support a finding against Edson as a claimant to funds deposited with the court, and the trial court improperly allowed execution on a superseded judgment.[1] Concluding Young's arguments are without merit, we affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

#### *The Purchase of the Property*

In 2001, Gumfory purchased two tracts of land in Cooke County from Young (the "Property"). Young personally financed the purchase through a promissory note in the amount of $96,000, bearing interest at 8.5% per annum for twenty years (the "Note"). The Note was secured by a deed of trust on the Property. A lawyer for the title company prepared the Note using a real estate form that he customized in accordance with the terms dictated by the parties.

---

1. In appellants' brief, Young asserts arguments on his own behalf and on behalf of Edson. Both parties joined in the notice of appeal, and appellants' counsel confirmed at oral argument that they represent both Edson and Young. Unless otherwise specified, references to Young's arguments include both Edson and Young.

### Salient Terms of the Note

The Note required monthly payments of $833.12, due on the 15th day of each month beginning July 15, 2001 and continuing "until the entire amount of principal and accrued, unpaid interest has been paid in full." The Note further provided that "[p]ayments will be applied first to accrued interest and the remainder to reduction of the principal amount." Payments were to be made to "Doyce Joe Young and Janette Young as Trustees for the Doyce Joe Young and Janette Young Trust" at the "Place of Payment"—the address listed for the Young residence. The Note does not call for payment in any particular form, nor does it call for payment in immediately available funds. Instead, it simply provides that "[Gumfory] promises to pay to the order of [Young] principal plus interest."

The terms of the Note also allow prepayment without penalty. Specifically, the Note states, "[b]orrower may prepay this note in any amount at any time before the Maturity Date without penalty or premium." The Note specifies that in the event of prepayment, "[p]repayments will be applied to installments on the last maturing principal, and interest on that prepaid principal will immediately cease to accrue."

In the event of default, the Note provides that Young will give Gumfory written notice of the default and Gumfory will have ten days after notice to cure. Gumfory also promises to pay reasonable attorney's fees and court costs if the Note is placed in the hands of an attorney to collect or enforce the Note. According to the terms of the Note, such expenses will become part of the debt evidenced by the Note and will be secured by any security for payment. The Note is to be construed under the laws of the State of Texas.

### Payments Under the Note

Between 2001 and 2005, Gumfory made regular installment payments, several of which exceeded the required monthly payment. These payments were made by personal check payable to Young.

### The Dispute

In 2005, Gumfory wanted to pay off the balance of the Note early. Gumfory estimated the payoff figure as of April 15, 2005 was $39,129.79 and requested that Young confirm his calculations. Young responded with a payoff sum of $49,501.29. In reaching this figure, Young relied on an amortization schedule he prepared at the inception of the Note. Gumfory responded in correspondence dated April 20, 2005, and stated once again, that he wanted to pay off the Note. Because a payment had been made in the interim, the payoff figure had changed and Gumfory estimated the new payoff amount as $38,567.94. This figure included interest from April 16 to May 15. Gumfory demanded that he be released from the Note for the amount of the payoff, and Young refused.

The crux of the dispute between the parties was the meaning of the prepayment clause in the Note. Both parties agreed the phrase "last maturing principal" required the application of prepayments to the back-end of the Note. The point of contention was the calculation of interest in accordance with the requirement that "interest on that prepaid principal will immediately cease to accrue." Young insisted that while interest on the last maturing principal payment ceased to accrue, the initial amortization schedule he prepared still governed the determination of the present amounts due and owing under the Note.

### The Denton County Lawsuit

The disagreement concerning the amount required to pay off the Note resulted in Gumfory filing a usury suit against Young in Denton County. Young retained Edson as his counsel. Edson answered the lawsuit on Young's behalf,

moved to transfer venue, and asserted claims against Gumfory and his attorneys. Specifically, Young asserted that Gumfory's attorneys were acting as Gumfory's alter ego and breached their ethical and professional duties due to an alleged insufficiency in the pleadings. Young further claimed to be entitled to recover for intentional misrepresentation, "commercial extortion" and malicious prosecution.[2]

### The Partial Sale of the Property

In March 2002, Gumfory sold two parcels of the Property subject to the deed of trust lien in favor of Young to Jim Wagner and Sam Nichols ("Wagner/Nichols"). Young approved the sale in advance.

### The First Attempted Payment

During the pendency of the Denton County lawsuit, Gumfory attempted to tender funds to Young. The first attempt, on August 29, 2005, was in the form of a personal check payable to Doyce Joe Young and Janette Young in the amount of $36,280.45. The back of the check was endorsed "payment in full and final payment of the Note." Young rejected the check, and refused to release the deed of trust lien on the Property.

### Impediments to Sale

On September 7, 2005, Gumfory's lawyer wrote to Edson concerning Young's refusal to release the deed of trust lien on the Property. Counsel reminded Edson that two parcels subject to the lien had been conveyed to Wagner/Nichols with Young's approval. Counsel advised that a contract to sell one of these parcels was set to close, and demanded release of the lien so that the sale could be consummated. Counsel further advised that if the contracted sale did not close, Gumfory would be forced to rescind his sale of that parcel to the purchaser. The lien was not released.

### Notice of Default

Gumfory did not make the monthly payment scheduled for September 15, 2005. As a result, Edson notified Gumfory that he was in default under the terms of the Note and had ten days to cure the default before the Property was posted for foreclosure.

### The Second Attempted Payment

On September 30, 2005, Gumfory delivered a cashier's check to Young at his residence. The check, in the sum of $36,535.63, was accompanied by correspondence stating "[t]his payment is made expressly as payment of unpaid principal and accrued interest due on the [Note] and, to the extent relevant, is a prepayment of principal as allowed by the [Note]." Although the check had no endorsements, conditions, or restrictions, Young rejected the check.

### The Third Attempted Payment

After Young rejected the second attempted payment, on the same day, Gumfory delivered the cashier's check to Edson. With a few exceptions, the accompanying correspondence mirrored the language in the letter of the same date addressed to Young. The correspondence to Edson did note, however, that the attempted delivery to Young earlier in the day had been made pursuant to instructions from Edson in previous correspondence insisting upon delivery to Young's residence. Edson rejected the check.

---

**2.** An associate judge subsequently sanctioned Edson under section 10 of the civil practice and remedies code for filing claims for an improper purpose, including harassment, undue delay, and increased expense in the litigation. The associate judge also determined the claims were not viable and had no evidentiary support, and Edson failed to use due diligence in connection with his decision to sign the pleading asserting these claims. Edson filed a notice of appeal of the associate judge's ruling, but there is no district court order affirming or reversing the associate judge's decision.

### Edson's Demand for Payment

On October 3, 2005, Edson sent a letter to Gumfory's counsel concerning Young's rejection of the September 30 payment. The letter stated, in pertinent part:

My client has incurred and/or paid considerable attorneys fees and other expenses ... So your tender, even if "unconditional"... is in the wrong amount AGAIN!!!

Demand is hereby made for fees and expenses to date of not less than $25,000 ... We would apply this check against those sums now due, but as you know, it has a defective payee ... any further checks tendered to us will be applied, first to the payments of attorneys fees, court costs, and other expenses, before application to the principal and/or interest accrued. As I've said, you haven't done this before, have you ... When added to the $25,000 in fees and expenses demanded above, already incurred, the total amount required to defease [sic] the lien in the Deed of Trust today is now **$74,049.64.**

(Emphasis in original). The letter also included a demand for a cashier's check in the amount stated above.

### The Dallas County Lawsuit

On October 7, 2005, Gumfory initiated the underlying lawsuit by filing a petition in interpleader and application for injunctive relief in Dallas County. Edson and Young were named as rival claimants to the tendered payments on the Note, and Gumfory tendered an initial interpleader payment of $1,000 into the registry of the court. Gumfory also sought to enjoin Young's threatened foreclosure on the Property.

### Notice of Acceleration

Despite the interpleader deposit and the pending application for a temporary restraining order, on October 8, 2005, Young, acting through Edson, gave notice of acceleration, with non-judicial foreclosure on the Property to occur on November 1, 2005. The trial court enjoined the foreclosure, granting both a temporary restraining order and subsequently, a temporary injunction.

### Consolidation of the Lawsuits

The Denton County lawsuit was consolidated with the Dallas County action, and thus, the claims asserted in the Denton County suit became a part of this case. After depositing the initial $1,000 in interpleader, Gumfory deposited an additional $35,535.63 into the registry of the court.

### Appointment of the Auditor

On January 26, 2006, the trial court appointed the Honorable Joseph M. Cox (the "Auditor") to serve as auditor in the case. The order of appointment stated the Auditor was to perform "all related duties the Court deems appropriate." The parties submitted briefs and expert reports to the Auditor at various points in the litigation. On August 18, 2006, the Auditor filed his report with the court. The report stated the Auditor was of the opinion that Gumfory's calculations as to the amount to pay off the Note were correct and the sum of $38,057.11 was amount required to pay off the remaining balance of the Note as of March 15, 2005. The Auditor also stated "[a]ll other issues as to the dispute between the parties should be referred back to [the court]." Although the Auditor invited the parties to submit findings of fact and conclusions of law, neither party did so. There is also no record of either party filing objections to the Auditor's report.

### The Summary Judgments

On October 10, 2006, Gumfory moved for a traditional partial summary judgment on his usury claim. On December 22, 2006, the trial court granted the motion in part and denied it in part. The summary judgment order recited several facts the court ordered established as a matter of law. In

particular, the court determined as a matter of law that the Auditor's conclusion was correct, and stated that the court accepted and adopted the auditor's finding that the sum of $38,057.11 was the amount required to pay off the Note as of March 15, 2005. The summary judgment order also identified several material facts to be determined at trial, including the determination of whether the Note was a commercial loan as defined by the finance code.

Following the entry of the order on partial summary judgment, Gumfory amended his petition to include a breach of contract action against Young for failure to release the lien on the deed of trust. Gumfory asserted he had suffered damages because the sale of the Wagner/Nichols tract to a third party failed to close and as a result, Gumfory had to rescind the sale to Wagner/Nichols. The petition also included previously asserted claims for a usury, an accounting, and declaratory relief.

On March 3, 2007, Gumfory filed a second motion for summary judgment seeking to dispose of all remaining claims. On November 27, 2007, the trial court signed a summary judgment order granting the motion in part and denying the motion in part. The order granted Gumfory's motion to strike Young's supplemental response to the summary judgment as untimely filed and sustained Gumfory's objections to the summary judgment evidence. The court denied summary judgment on release of the lien, and granted summary judgment on all of the claims Young asserted against Gumfory's lawyers, including alter ego, violation of ethical and professional duties, intentional misrepresentation, commercial extortion, and malicious prosecution. The court reserved for trial the remaining issues of what amount was owed on the Note as of August 29, 2005, whether there was a breach by Young's failure to accept the tender, and whether Gumfory was entitled to damages, including attorney's fees, as a result of the breach.

Subsequently, but prior to the trial of the remaining issues, the trial judge also announced to the parties that she had ruled the loan was a commercial loan, and therefore the maximum rate of interest chargeable on the loan for purposes of the usury analysis was 18% per annum.

### Trial and Judgment

The case was tried to the court on November 30, 2007. At the conclusion of trial, the court made written findings of fact and conclusions of law. Final judgment was entered on December 28, 2007. In the final judgment, the court reaffirmed it prior rulings on summary judgment and its ruling that the loan was a commercial loan. The court also included "findings" in the final judgment. In particular, the court used the Auditor's figure of $38,057.11 and deducted five additional payments to determine the amount due on the Note at the time of the attempted payments was $35,327.03. Although the court repeated some of the findings set forth in its findings of fact and conclusions of law, some of the "findings" in the final judgment were different. The court ordered that Gumfory recover $11,363.16 from Young in actual damages, and $135,432 in attorney's fees from Young and Edson, jointly and severally. The judgment also declared Gumfory was entitled to the release of the deed of trust lien. Following the entry of judgment, Young moved for a new trial. Gumfory moved for an order directing the District Clerk to disburse the funds in the court registry to Gumfory as a credit to be applied to the judgment. Young opposed the release of the registry funds and began the process of filing a supersedeas bond. The trial court denied the motion for new trial and granted the motion to release the funds. This appeal followed.

## DISCUSSION

### *Interpretation of the Promissory Note*

In his first issue, Young contends the trial court erred in its interpretation of the Note's prepayment clause. Because the ruling about which Young complains is set forth in a partial summary judgment order entered on December 22, 2006, we construe this issue as a challenge to the trial court's first grant of partial summary judgment.[3]

We review a grant of summary judgment under a de novo standard. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). When reviewing a traditional summary judgment, we determine whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact on one or more of the essential elements of the plaintiff's causes of action or each element of the affirmative defense. Tex.R. Civ. P. 166a(c); *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex.2004).

The Auditor concluded that Gumfory's calculations concerning the amount required to pay the remaining balance on the Note were correct, and the sum of $38,057.11 was the amount required to pay off the Note as of March 15, 2005. Significantly, however, the issue before the court on summary judgment was whether the amount demanded by Young to pay off the Note constituted a charge of usurious interest. In support of his summary judgment usury argument, Gumfory submitted the Auditor's report to demonstrate that Young charged more on the Note than was due and owing. The trial court did not rule on the usury issue, but determined as a matter of law that the Auditor's conclusion was correct. Although the trial court arguably may have granted more relief than requested, Young does not complain about the summary judgment, nor does he advance an argument that the trial court's ruling exceeded the scope of the summary judgment.

While we recognize the parties' usury arguments may necessarily have been premised on their respective underlying interpretations of the Note's prepayment clause, the express summary judgment ruling concerned only the Auditor's conclusion. Young's argument, which is couched only in terms of the trial court's purportedly erroneous construction of the Note, essentially requires an inference that the Auditor's conclusion was predicated on interpretation of the Note, followed by an inference that in adopting the Auditor's conclusion the trial court construed the Note. But even if we were inclined to indulge these seemingly logical assumptions, the scope of our review is limited to the summary judgment record upon which the trial court's ruling was based. *See C.M. Asfahl v. Tensor, Inc.*, 135 S.W.3d 768, 787 (Tex.App.-Houston [1st Dist.] 2004, no pet.). We consider only the issues raised and the proof actually presented by the parties in their written motions and responses. *See Mayfield v. Lockheed*

---

3. Both parties fail to distinguish between the evidence submitted in the first and second summary judgment proceedings. The December 22 partial summary judgment, however, is the only summary judgment pertinent to this issue. The court's "reaffirmation" of its December 22 ruling in the second partial summary judgment order is of no consequence to our analysis. Therefore, our review is limited to the evidence before the court at the time of the first motion for partial summary judgment.

*Eng. & Sciences, Co.,* 970 S.W.2d 185, 187 n. 2 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). It is to these issues that we now turn.

In his partial motion for summary judgment, Gumfory argued Young overcharged him on two occasions when he quoted the amount due to pay off the Note. According to Gumfory, these quotes constituted charges of usurious interest. Although the motion references the prepayment clause, there is no argument or authority concerning its construction. The Auditor's report was adduced as summary judgment evidence for the sole purpose of establishing the amount due on the Note when Gumfory attempted to pay it. There was no argument or evidence specifically directed toward or addressing the underlying basis of the Auditor's conclusion.

In addition to the Auditor's report, Gumfory's summary judgment evidence included the affidavit of Lynn Gumfory. Ms. Gumfory authenticated the Note and the parties correspondence, and described the attempts to pay off the Note. Gumfory also submitted excerpts from Young's deposition in which Young discussed payments and credits under the Note. Finally, Gumfory's summary judgment evidence included an expert affidavit addressing the spreading of interest over the life of the loan for purposes of establishing that Young charged usurious interest.

Although Young did not file separate objections to the summary judgment evidence, the response itself contains several statements that might be construed as objections. Notably, in a paragraph assailing the integrity of the Auditor, Young states the Auditor's report is "wrong" and "procedurally defective" because the Note "does not allow for this loose interpretation of the transaction of the parties." But there is no argument, authority, or evidence to support these bare assertions. Apparently recognizing a dimension of the dilemma with which we are now faced, Young further stated that the Auditor's report "contains no 'findings of fact' or 'conclusions of law' regarding the proper interpretation of the promissory note." If these statements were intended as objections, there is nothing in the record to indicate that Young pursued the objections to a ruling. But we need not consider whether the objections were based on form or substance or whether the granting of the summary judgment implicitly overruled the objections because Young has not challenged the summary judgment evidence on appeal. Conversely, if the statements were intended as argument raising a material fact issue about the auditor's report, they were not supported by competent summary judgment evidence. *See* Tex.R. Civ. P. 166a (c).

Young's summary judgment evidence consisted of excerpts from Gumfory's deposition concerning the subdivision of the Property, the payment of taxes, and whether Gumfory claimed a homestead exemption on the Property. Young also submitted property tax records as evidence. Young argued this evidence established that the commercial and investment rate of interest should apply to the Note for purposes of determining whether usurious interest was charged. To address the calculation of interest for purposes of the usury analysis, Young submitted an expert affidavit in which the expert computed the effective interest rate on the Note using the pay off figure Young quoted to Gumfory. None of this evidence pertained to or challenged the Auditor's conclusion or the underlying construction of the prepayment clause in the Note.

Young maintains the submissions to the Auditor were the source of the error. According to Young, "the [Auditor] erred in stating the payoff amount and the court erred by adopting the [Auditor's] recom-

mendation and using that figure in her payoff calculations." In support of his argument, Young directs our attention to four expert reports he contends were submitted to the Auditor. But none of these reports were part of the summary judgment record. Indeed, two of the reports are not part of the record at all. Although the other two reports generally appear in the appellate record, they were submitted to the court outside the context of the summary judgment proceeding and after the Auditor's report was filed. Therefore, the reports were not summary judgment evidence and do not demonstrate the basis of the Auditor's conclusion for purposes of our summary judgment analysis.

In a seemingly circular argument, Young insists the court construed the contract by adopting the Auditor's conclusion. Yet Young also states "the court ignored that the [Auditor's] primary focus was on whether usury occurred and not to interpret the contract." [4] The fallacy of both approaches is that there is no summary judgment evidence to establish either the Auditor's focus, or whether and to what extent the Auditor may have interpreted the Note. Likewise, there is no summary judgment evidence from which we might draw reasonable inferences in this regard.

In short, there is nothing in the summary judgment record to establish the basis for the Auditor's conclusion or that the Auditor's conclusion was challenged in the context of the summary judgment proceeding. The summary judgment record is also devoid of direct or circumstantial evidence or reasonable inferences that the Auditor's conclusion was incorrect. As a result, we cannot infer that the trial court construed the Note by adopting the Auditor's conclusion. Viewing only the evidence in the summary judgment record

and resolving all doubts in Young's favor, we conclude that because Young did not raise a material fact issue concerning any aspect of the Auditor's report, the trial court did not err in adopting the Auditor's conclusion as a matter of law. Young's first issue is overruled.

### Tender

Without identifying specific findings, in his second issue Young generally argues the trial court erred in finding that a proper tender occurred. In support of this argument, Young asserts because he has established the court's interpretation of the Note was in error, there is no evidence to support the court's finding of breach for rejection of the tenders. Young also urges that he was justified in rejecting the tenders because the tenders were defective. Gumfory responds that the trial court correctly interpreted the Note and the tenders were not defective.

The standards of review for claims of legal and factual sufficiency of the evidence govern appeals of non-jury trials on the merits. *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997). When a party appeals from a non-jury trial, it must complain of specific findings and conclusions of the trial court. *City of Dallas v. Pacifico Partners, Ltd.*, 289 S.W.3d 371, 373 (Tex.App.-Dallas 2009, no pet.). A general complaint against the trial court's judgment does not present a justiciable question. *Id.* In an appeal from a bench trial, a trial court's findings of fact "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991); *see also Aland v. Martin*, 271 S.W.3d 424, 428–29 (Tex. App.-Dallas 2008, no pet.).

---

**4.** Affording Young's argument a liberal construction, we still cannot construe this general statement, unsupported by argument or authority, as an argument that the trial court exceeded the scope of the summary judgment. *See* Tex.R.App. P. 38.1.

A trial court's findings of fact may be reviewed for factual sufficiency under the same standard that is applied in reviewing evidence to support a jury's answer. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 684 (Tex.App.-Dallas 1993, no writ). When findings of fact are filed and unchallenged, they are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). In determining if a trial court's findings of fact were factually sufficient, we review all evidence in the record, including evidence contrary to the finding. *See Tierra Sol Joint Venture v. City of El Paso,* 155 S.W.3d 503, 507 (Tex.App.-El Paso 2004, pet. denied). We may set aside the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *Id.* We may not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *Id.*

We review the trial court's legal conclusions de novo. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). In our review of the legal sufficiency of the evidence supporting the judgment, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *Id.* A legal-sufficiency issue will be sustained if the record reveals one of the following: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence established conclusively the opposite of the vital fact. *Id.* If we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment. *BMC Software Belgium, N.V.,* 83 S.W.3d at 794. We uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

We begin by addressing Young's contention that the trial court's findings are not supported by sufficient evidence because the trial court's interpretation of the Note was incorrect. Again, this contention pertains to the trial court's ruling on the first partial summary judgment. We have already concluded the trial court did not err in granting partial summary judgment and therefore reject Young's sufficiency challenge to the findings he claims are insupportable because of this ruling.

■ Next, we turn to Young's argument that the defective nature of the tenders obviated Young's obligation to accept them. Young challenges both of Gumfory's attempts to pay off the Note on September 30 and the tender of funds into the registry of the court, claiming these tenders were defective because among other things, they were not unconditional.

■ A tender is an unconditional offer by a debtor to pay a sum not less than the full amount due on a debt or obligation. *Weisfeld v. Texas Land Finance Co.,* 162 S.W.3d 379, 383 (Tex.App.-Dallas 2005, no pet.). Young's argument concerning the alleged conditional nature of Gumfory's tenders focuses on Gumfory's efforts to pay the note in full. But we need not consider whether Gumfory's efforts to pay off the Note constituted conditional, or otherwise improper tenders because even if the breach findings relating to the tenders were in error, the trial court's other finding of breach supports the judgment.

*See BMC Software Belgium, N.V.*, 83 S.W.3d at 794.

Specifically, in addition to the findings about which Young complains, the trial court also found "[d]efendants breached the terms of the Note by refusing to accept prepayments of principal on the Note during August and September 2005." This finding is supported by the evidence. The Note expressly provided for prepayment and prepayment could be in any amount. In his September 30 correspondence, Gumfory stated that the $36,535.63 was for the payment of unpaid principal and accrued interest and a prepayment of principal as allowed by the Note. Even if Young disputed whether the amount fully satisfied the total amount of the Note, the express terms of the Note still required that he accept the $36,535.63 as a prepayment. Therefore, the trial court correctly concluded that Young breached the terms of the Note by refusing to accept prepayments of principal, and the trial court's judgment is supported by this finding. Young's second issue is overruled.

### Breach, Damages and Attorney's Fees

In his third issue, Young argues the evidence is insufficient to support several of the court's findings. First, Young challenges findings 10–12 regarding Young's breach of the terms of the Note. Young insists that each of the breach findings was premised on the court's "erroneous conclusions about the Auditor's report and conclusion and its calculation of the amount due under the Note."[5] We previously concluded the trial court did not err in adopting the Auditor's conclusion as a matter of law, and therefore find Young's suf-

ficiency challenge based upon the trial court's summary judgment ruling unpersuasive. In addition, while the findings related to Gumfory's tenders of the full amount of the Note stemmed from the Auditor's conclusion, the finding of breach by failure to accept prepayments of principal is unrelated to the Auditor's conclusion concerning the amount required to pay off the Note.

■ Young also challenges the findings related to the charging of interest (number 9 and 11). Finding number 9 states "[d]efendants breached the terms of the Note by charging excessive, albeit not usurious interest." Finding number 11 states "[d]efendants breached the terms of the Note by continuing to charge interest on those parts of the principal of the Note that had previously been prepaid by plaintiffs." As Young correctly notes, however, the trial court found there was no usury because the Note was a commercial note. In addition, we have previously concluded Young breached the Note by refusing to accept prepayment. Therefore, even if the trial court erred in finding breach based upon the charging of excessive interest, such error does not support reversal of the judgment. *See BMC Software Belgium, N/V.*, 83 S.W.3d at 794.

Young also argues the evidence is insufficient to support finding number 15 awarding Gumfory consequential damages because it relies on the "prior erroneous breach findings." We have determined the trial court correctly concluded that Young breached the Note. Therefore, the award of damages based upon the breach was not in error.

---

**5.** Young is apparently referring to "findings" the court recited in the final judgment rather than the separately filed findings of fact and conclusions of law. Findings of fact are not to be recited in a judgment. See Tex.R. Civ. P. 299a; *Frommer v. Frommer*, 981 S.W.2d 811, 814 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd). Here, neither party complains about the findings in the judgment. For purposes of Young's third issue, there is no conflict between the findings in the judgment and the findings made pursuant to Tex.R. Civ. P. 297 and 298. Therefore, we consider the findings identified by Young in evaluating his argument.

■ Next, Young challenges the trial court's finding that Gumfory is entitled to recover lost profit on the sale to Wagner/Nichols. The record reflects that Gumfory sold the tract to Wagner/Nichols for a profit and financed the sale. A sale of the Wagner/Nichols tract was pending when Young refused to release the deed of trust lien on the Property. Because Young refused to release the lien, the sale from Wagner/Nichols to a third party could not be consummated. As a result, Gumfory was forced to rescind the sale to Wagner/Nichols and refund the interest Wagner/Nichols had paid. Gumfory was also required to pay the taxes on the tract that he would have avoided had the third-party sale closed. The record further reflects that Gumfory's damages totaled $11,363.16, the amount found by the trial court. Based on our review of the record, we conclude the evidence is sufficient to support the trial court's finding.

Finally, Young asserts Gumfory is not entitled to an award of attorney's fees under chapter 37 or 38 because the trial court erroneously concluded there was a breach of contract and the court's declaration of rights under the Note was in error. See TEX. CIV. PRAC. & REM.CODE ANN. § 37.009, 38.001 (Vernon 2008).[6] We have concluded the trial court's finding of breach was not in error. Consequently, Young's challenge to the award of fees on this basis also fails. Because the attorney's fees award is proper under TEX. CIV. PRAC. & REM.CODE ANN. § 38.001, we need not address whether the award is also proper under chapter 37. See BMC Soft-

*ware Belgium,* N/V., 83 S.W.3d at 794. Young's third issue is overruled.

### Edson's Status As An Adverse Claimant.

■ The trial court found that Edson made a conflicting claim to the sums Gumfory tendered to Young, and concluded that because Gumfory was subject to rival claims from Edson and Young, interpleader was appropriate. In his fourth issue, Young contends the evidence is insufficient to support this finding and there is no viable basis for the trial court's conclusion. We disagree.

■ Under rule 43, a party who receives multiple claims to funds in its possession may join all claimants in one lawsuit and tender the disputed funds into the registry of the court. TEX.R. CIV. P. 43; *Cable Communications Network, Inc. v. Aetna Cas. & Sur. Co.,* 838 S.W.2d 947, 950 (Tex.App.-Houston [14th Dist.] 1992, no pet.). A party is entitled to interpleader relief if three elements are met: (1) it is either subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) it has not unreasonably delayed filing its action for interpleader; and (3) it has unconditionally tendered the funds into the registry of the court. *Sav. & Profit Sharing Fund v. Stubbs,* 734 S.W.2d 76, 79 (Tex.App.-Austin 1987, no writ). We note at the outset that Young challenges only whether Edson was an adverse claimant to the funds; there is no assignment of error to the unconditional nature of the tender in connection with Edson's liability nor is there a challenge to the award of attorney's fees under the law of interpleader.[7] Our review is restricted accordingly. *See* TEX.R.APP. P. 38.1.

6. Gumfory correctly notes that the trial court also found that attorney's fees should be awarded pursuant to the law of interpleader. But this finding was set forth in the findings of fact and conclusions of law. The finding in the judgment awarded fees only under chapter 37 and 38. Because Young does not challenge the attorney's fees award in interplead-

er, we need not address these discrepancies in the findings. *See* TEX.R. CIV. P. 299a.

7. In addition, to the extent Young intended the passing reference to joint and several liability as a challenge to anything other than Edson's status as an adverse claimant to the interpleader funds, we conclude the argument

We begin by reviewing all evidence in the record that either supports or is contrary to the trial court's finding that Edson was a competing claimant to the interpleader funds. Edson's October 3 correspondence is instructive in this regard. After he demanded an additional $25,000 for his fees and expenses, Edson stated that any further checks tendered as payment on the Note would first be applied to the payment of these expenses. Edson then added the amount of his fees and expenses to the amount Young claimed was due on the Note, and stated that the combined total was required to release the deed of trust lien. Young argues Edson did not state the attorney's fees should be paid directly to Edson, but reasonable inferences from the evidence suggest otherwise. When Edson stated "we would apply the check against [attorney's fees and expenses], but as you know, it has a defective payee ..." it could reasonably be interpreted as a claim for payment to be made to Edson. In fact, the unobjected to trial testimony of Gumfory's counsel reflects that this is exactly how the statement was interpreted. Specifically, counsel testified that Gumfory interpreted Edson's demand as a claim of the first right to the first $25,000 tendered into the registry of the court. The court might reasonably have concluded that Edson conceded the point about the interpretation of his letter. When Edson testified at trial, he admitted the October 3 correspondence into evidence and testified that it was the only basis he could think of that would permit Gumfory to name him as a party. In considering the effect of Edson's correspondence, we note that a stakeholder "need only show that it is or may be exposed to double or multiple liability as a result of conflicting claims justifying a rea-

sonable doubt as to which claimant is entitled to the funds." *Bank One, Texas N.A. v. Taylor,* 970 F.2d 16, 23 (5th Cir.1992) (citing *Sav. & Profit Sharing Fund,* 734 S.W.2d at 79) (applying Texas law). Any reasonable doubt as to a party's right to interpleader should be resolved in his favor. *See Citizens Nat'l Bank v. Socony Mobil Oil Co.,* 372 S.W.2d 718, 722–23 (Tex.Civ.App.-Amarillo 1963, writ ref'd n.r.e.).

Without argument or authority as to the significance, Young generally refers to the joint answer Young and Edson filed in response to the petition in interpleader to demonstrate Edson's "opposition" to being named as a defendant in the lawsuit. Although the answer contains a special exception to naming Edson and his law firm as defendants, the record does not reflect whether the special exception was ever ruled upon by the court. In addition, under the heading "Verified Special Denials" there is a statement that "defendant is not liable in the capacity in which he is sued, specifically as individuals and attorneys." We assume Edson is the "defendant" to which the special denial refers, but note that Edson's verification is not attached to the answer. Regardless of how Edson elected to demonstrate his opposition to being named as a party, however, Young fails to explain how such opposition establishes that Edson made no claim to the interpleader funds.

The record also reflects that Edson and Young jointly filed an application for distribution of funds from the registry of the court. Contrary to Gumfory's assertion, the application does contain a statement that might be construed as Edson's disclaimer to the finds. The application states that the check should be made out

has been waived. *See* RAP 38.1; *Johnson v. Oliver,* 250 S.W.3d 182, 187 (Tex.App.-Dallas

2008, no pet.).

to Young because Edson has no claim apart from what was due and owing to his client. But Gumfory's counsel testified without objection at trial that Edson refused to withdraw his demand for attorney's fees in connection with his efforts to have the funds released from the registry of the court. The trial court's docket sheet reflects that the application to distribute the finds was denied following a hearing, but there is no record of the hearing before us. Therefore, we presume the evidence adduced at the hearing supported the trial court's finding. *See Mason v. Our Lady Star of the Sea Catholic Ch.*, 154 S.W.3d 816, 819 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (stating with only partial reporter's record appellate court presumes omitted portions of record are relevant and support the judgment).

Having reviewed the evidence, we cannot conclude the trial court's finding was so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. Similarly, within the narrow context of Young's challenge, we cannot conclude the trial court's legal conclusion is incorrect. Young's fourth issue is overruled.

### Execution on Superseded Judgment

In his fifth issue, Young argues the trial court erred in releasing the funds from the registry of the court to Gumfory as a credit against the judgment. Young maintains that a supersedeas bond, filed after Gumfory moved to release the funds, was on file with the court and the court "should have been aware of it." Gumfory responds that the bond was not perfected at the time the court considered release of the funds and the record does not demonstrate Young ever notified the court that he had complied with the requirements for posting an effective supersedeas bond.

We have concluded the trial court did not err in awarding judgment to Gumfory. Therefore, we need not consider whether the trial court erred in releasing the funds. In light of our disposition of the case on appeal, any such error would have been harmless. *See* Tex.R.App. P. 44(a)1.

Having resolved all of Young's issues against him, we affirm the trial court's judgment.