**FURMANITE WORLDWIDE, INC., Appellant,**

v.

**NEXTCORP, LTD., Appellee.**

No. 05–09–00580–CV.

Court of Appeals of Texas, Dallas.

March 30, 2011.

Stephen White Schueler, Houston, TX, David Fowler Johnson, Winstead PC, Fort Work, TX, for Appellant.

Thomas G. Farrier, James Dan Moorhead, Brandy R. Manning, Murphy Mahone Keffler & Farrier, LLP, Fort Worth, TX, for Appellee.

Before Justices MURPHY, FILLMORE, and MYERS.

## OPINION

Opinion By Justice MYERS.

This is an appeal from a summary judgment. Furmanite Worldwide, Inc. brings two issues asserting the trial court erred by denying its motion for summary judgment and by granting NextCorp, Ltd.'s motion for summary judgment in NextCorp's suit on the parties' contract. We conclude the contract is ambiguous. We reverse the trial court's judgment and remand the cause for further proceedings.

## BACKGROUND

On December 1, 2002, NextCorp and Furmanite entered into a written "Client Service Agreement" for NextCorp to provide Furmanite financial software services, including "applications hosting" and consulting and for Furmanite to pay agreed amounts for the services. The conflict in this case involves the term of the agreement, the procedures for amending the term of the agreement, and Furmanite's right to terminate the agreement.

The agreement consisted of three parts. The "Client Service Agreement" contained the general provisions governing the parties relationship; two "Statements of Work" contained more specific details of the work to be performed; and changes to the scope of the work were in "change orders."

The Client Service Agreement provided that it "shall continue until the expiration of the term agreed upon by the parties and set forth on *Exhibit 'A'* hereto." Exhibit A was the first Statement of Work, signed at the same time as the Client Service Agreement, December 1, 2002. Exhibit A provided that NextCorp would provide consulting services for a twelve-month term, from December 1, 2002 through November 30, 2003. On February 17, 2003, when NextCorp began providing hosting services, the parties signed a second Statement of Work, Exhibit A.1, which provided that the "Hosting Term" was "36 months beginning April 1, 2003 ... and ending the latter of 36 months from the beginning date or March 31, 2006." The parties appear to agree that Exhibit A.1 amended the term of the agreement to the period of April 1, 2003 to March 31, 2006.

The Client Service Agreement provided that either party could terminate the agreement for cause at any time by giving the other party 30 days' notice with an opportunity to cure the breach of the agreement. The Client Service Agreement also provided that Furmanite could terminate the agreement without cause, but if it did so during the first year of the agreement, it would pay to NextCorp a cancellation fee of the balance of the hosting fees for the first year of the agreement, plus an additional six months' hosting fees. If the termination occurred after the first year of the agreement, the cancellation fee would be six months' hosting fees. The cancellation fee was due before the termination date.

The parties agreed to subsequent changes in the products, hosting services, and consultation services in the change orders. The change orders were created by Furmanite telling NextCorp what new products and services it required, NextCorp would place the items into its form change order and send the change order to Furmanite, and an officer of Furmanite would (usually) sign the change order and send it back to NextCorp. When the change order involved new hosting services, the change order provided that the "Hosting Term" would be thirty-six months from the time of the new services. NextCorp was paid by making regular drafts from Furmanite's bank account for the amount owed.

The opening paragraph of the first fourteen change orders stated they amended the Client Service Agreement dated December 1, 2002, that the change order would commence on a particular date, and that "all terms, conditions, and provisions of the CSA shall remain in force and apply to the provisions of this Change Order." However, in the change order signed December 1, 2004, NextCorp unilaterally changed the opening paragraph of its form change order to provide:

> This Change order amends the existing Client Service Agreement (the "CSA") between NextCorp, Ltd. ("NextCorp") and Furmanite Worldwide, Inc. ("Client") dated December 1, 2002. *The date of the CSA is hereby amended to be [the commencement date of the change order] and any reference to the "first year of the Agreement" contained in the CSA shall hereafter mean the first full year following the date inserted in the immediately preceding sentence.* Unless otherwise provided herein, all terms, conditions and provisions of the CSA shall remain in full force and effect and apply equally to the provisions of this Change Order.

(Emphasis added.) Furmanite's witnesses testified that they did not observe the modification to the opening paragraph. Except for one change order, all the subsequent change orders contained the language purporting to change the date of the Client Service Agreement and the meaning of "first year of the Agreement." The final change order stated that the date of the Client Service Agreement was August 31, 2006.

On January 4, 2007, Furmanite sent NextCorp written notice that it was terminating the NextCorp's services "during a transition period that will be completed on or before July 31, 2007." The letter also explained that the hosting services term in Exhibit A.1 concluded on March 31, 2006, "[t]herefore, the contract term of the Client Service hosting agreement is now expired, as far as Furmanite is concerned."

On June 30, 2007, Furmanite sent NextCorp a letter stating the transition was completed on June 29, 2007 "and concludes our hosting service with NextCorp." The letter also requested refunds of amounts that NextCorp had overcharged Furmanite.

On August 31, 2007, NextCorp sued Furmanite for failing to pay the cancellation fee. NextCorp alleged that because the opening paragraph of the last change order had modified the starting date of the Client Service Agreement to August 31, 2006, and the opening paragraph had redefined the phrase "first year of the agreement" to mean "the first full year following" August 31, 2006, Furmanite had terminated during the first year of the agreement. Pursuant to the termination-without-cause provision of the Client Service Agreement, NextCorp demanded payment of the hosting fees for July and August 2007 as well as six additional months of hosting fees, a total of $505,726.72, plus interest and attorney's fees.

Both sides moved for summary judgment. The trial court granted NextCorp's motion for summary judgment, awarding it damages of $505,726.72, plus interest and attorney's fees, and denied Furmanite's motion for summary judgment.

### SUMMARY JUDGMENT

In its first issue, Furmanite asserts the trial court erred in granting NextCorp's motion for summary judgment; and in its second issue, Furmanite asserts the trial court erred in denying its motion for summary judgment. NextCorp moved for summary judgment asserting its entitlement to judgment as a matter of law on its

claim for the cancellation fee under the Client Service Agreement. NextCorp also moved for no-evidence summary judgment on Furmanite's affirmative defenses of waiver, laches, estoppel, impossibility of performance, lack of consideration, and frustration of purpose. Furmanite moved for summary judgment, asserting NextCorp was not entitled to the cancellation fee as a matter of law.

### Standard of Review

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *McAfee, Inc. v. Agilysys, Inc.,* 316 S.W.3d 820, 825 (Tex.App.-Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon,* 690 S.W.2d at 549; *In re Estate of Berry,* 280 S.W.3d 478, 480 (Tex.App.-Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex.2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied).

█ When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston Cnty.,* 861 S.W.2d 861, 862 (Tex.1993); *Howard v. INA Cnty. Mut. Ins. Co.,* 933 S.W.2d 212, 216 (Tex. App.-Dallas 1996, writ denied). Neither party can prevail because of the other's failure to discharge its burden. *Guynes,* 861 S.W.2d at 862; *Howard,* 933 S.W.2d at 216. When both parties move for summary judgment, we consider all the evidence accompanying both motions in determining whether to grant either party's motion. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000). When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented. *Id.* The reviewing court should render the judgment that the trial court should have rendered. *Id.* When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Id.*

█ We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX.R. CIV. P. 166a(i); *Flood v. Katz,* 294 S.W.3d 756, 762 (Tex.App.-Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See id.* When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005)). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their con-

clusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)).

### Contract Interpretation

■■■■ When construing a contract, our primary goal is to determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex.2009); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co.*, 297 S.W.3d at 252; *Coker*, 650 S.W.2d at 393. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393; *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex.App.-Dallas 2005, no pet.). We review an unambiguous contract de novo. *Chrysler Ins. Co.*, 297 S.W.3d at 252. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394; *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex.App.-Dallas 2006, pet. denied). The court of appeals may determine ambiguity as a matter of law for the first time on appeal. *Simba Ventures Shreveport, L.L.C. v. Rainier Capital Acquisitions, L.P.*, 292 S.W.3d 173, 178 (Tex.App.-Dallas 2009, no pet.); *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 347 (Tex.App.-Dallas 2004, pet. denied) (citing *Sage Street Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 444–46 (Tex.1993)).

### NextCorp's Traditional Motion for Summary Judgment

NextCorp asserted in its traditional motion for summary judgment that it was entitled to the cancellation fee because Furmanite terminated the agreement without cause during the term of the agreement. The provision on which NextCorp relies is paragraph 4(ii) of the Client Service Agreement:

**(ii)** *Termination without Cause.* **Applies to Applications Hosting Services Only** In the event Client [Furmanite] desires to terminate this Agreement due to any reason other than NextCorp's breach, Client may do so by providing NextCorp with written notice of Client's decision to terminate no less than 30 days prior to such termination date. If such termination date occurs within the first year of the Agreement, Client shall pay to NextCorp, prior to such termination date, a cancellation fee equal to the balance of the hosting fees due NextCorp for the first year of the Agreement, plus an amount equal to six (6) months hosting fees. If such termination date occurs following the first anniversary date of this Agreement, the cancellation fee due NextCorp prior to such termination date shall be equal to six (6) months hosting fees.

The opening paragraph of the change order that NextCorp asserts amends the starting date of the Client Service Agreement provides,

This Change order amends the existing Client Service Agreement (the "CSA") between NextCorp, Ltd. ("NextCorp") and Furmanite Worldwide, Inc. ("Client") dated December 1, 2002. The date of the CSA is hereby amended to be August 31, 2006, and any reference to

the "first year of the Agreement" contained in the CSA shall hereafter mean the first full year following the date inserted in the immediately preceding sentence.

NextCorp argued this provision in the change order modified the Client Service Agreement to provide that the phrase "first year of the Agreement" meant the first full year following August 31, 2006.

 The change order states it amends the phrase "first year of the Agreement" to mean "the first full year following the date inserted in the immediately preceding sentence." August 31, 2006 is in the same sentence, not the "immediately preceding sentence." The "date inserted in the immediately preceding sentence" is December 1, 2002. Thus, the opening paragraph of the change order contains two specific but conflicting provisions concerning the starting date of the agreement. Under one provision, "[t]he date of the CSA is ... August 31, 2006," and another provision states, "the first year of the Agreement" means "the first full year following ... [December 1, 2002]." Either beginning date is a reasonable interpretation of the change order.

NextCorp cites another provision in the change order, the "Hosting Summary," which states the "Hosting Term" is "36 months beginning September 1, 2006 and ending August 31, 2009." This provision adds a third possible beginning date for the agreement, September 1, 2006. However, even if the beginning date of the "Hosting Term" were August 31, 2006, in light of the specific definition of "first year

of the Agreement" meaning "the first full year following" December 1, 2002, the change order would not establish as a matter of law that Furmanite terminated the agreement either during the "first year of the Agreement" or during the agreement's term.

We conclude that NextCorp's motion for summary judgment on its breach of contract cause of action was based on an ambiguous term in the parties' agreement. Accordingly, the trial court erred in granting NextCorp's motion for summary judgment. We sustain Furmanite's first issue as to NextCorp's traditional motion for summary judgment.[1]

### NextCorp's No–Evidence Motion for Summary Judgment

Furmanite contends the trial court erred in granting NextCorp's no-evidence motion for summary judgment on appellant's affirmative defenses of waiver and estoppel. Furmanite does not appeal the trial court's granting of NextCorp's motion for summary judgment on the affirmative defenses of laches, impossibility of performance, lack of consideration, and frustration of purpose. Accordingly, we affirm the trial court's summary judgment on those defenses. *See Kelly v. Brown*, 260 S.W.3d 212, 216 (Tex.App.-Dallas 2008, pet. denied).

 Furmanite asserts it presented sufficient evidence to raise genuine issues of material fact on its affirmative defenses of waiver, equitable estoppel, and quasi-estoppel.[2] Waiver is the intentional relin-

---

1. Having concluded the trial court erred in granting NextCorp's traditional motion for summary judgment, we do not address appellant's arguments on appeal in which it asserts the existence of genuine issues of material fact on whether the cancellation fee was an unenforceable penalty or that Furmanite terminated the agreement for cause.

2. On appeal, both Furmanite and NextCorp cite to documents that were not part of the summary judgment record and were not before the trial court when it ruled on the parties' motions for summary judgment. We do not consider those documents but limit our review to the summary judgment record. *See*

quishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex.2003); *Sun Explor. & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex. 1987). The elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct). *G.H. Bass & Co. v. Dalsan Properties–Abilene,* 885 S.W.2d 572, 577 (Tex.App.-Dallas 1994, no writ). "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan,* 111 S.W.3d at 156. A person who does nothing inconsistent with an intent to rely upon a right does not waive that right. *Id.* Equitable estoppel is based on the principle that "one who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause loss or injury to another." *Fiengo v. Gen. Motors Corp.,* 225 S.W.3d 858, 861 (Tex.App.-Dallas 2007, no pet.) (quoting *City of Fredericksburg v. Bopp,* 126 S.W.3d 218, 221 (Tex.App.-San Antonio 2003, no pet.)). The elements of equitable estoppel are (1) a false representation or concealment of material facts (2) made with the knowledge, actual or constructive, of those facts (3) to a party without knowledge, or the means of knowledge, of those facts (4) with the intention that it should be acted on, and (5) the party to whom it was made relied or acted on it to his prejudice. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex.1998); *Dick's Last Resort of West End, Inc. v. Market/Ross, Ltd.,* 273 S.W.3d 905, 916 n. 5 (Tex.App.-Dallas 2008, pet. denied). Qua-

si-estoppel refers to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits. *Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.,* 817 S.W.2d 160, 164 (Tex.App.-Houston [14th Dist.] 1991, no writ). Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 864 (Tex.2000). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. *Id.*

■ Furmanite asserts NextCorp waived the cancellation fee and is estopped from asserting its right to the fee by continuing to provide the hosting services for six months following Furmanite's January 4, 2007 notice of termination. We disagree. NextCorp was obligated to provide the hosting services until the termination date, just as Furmanite was obligated to pay for the hosting services until the termination date. NextCorp's provision of hosting services during that period is not inconsistent with its claim for the cancellation fee, and it is not evidence that NextCorp waived or is estopped from asserting the right to the cancellation fee.

■ Furmanite also asserts NextCorp waived and is estopped from asserting its right to the cancellation fee because it did not make demand for the cancellation fee until August 31, 2007, one month after the termination date set forth in the termination letter. Furmanite argues, "The demand was a position inconsistent with the one NextCorp had maintained over the previous six months, in which it was aware Furmanite did not intend to pay a termination fee and continued to provide services and accept payment for these ser-

*Young v. Gumfory,* 322 S.W.3d 731, 738 (Tex. App.-Dallas 2010, no pet.).

vices." NextCorp's demand for the cancellation fee is not inconsistent with its providing hosting services and acceptance of payments after it received the January 4, 2007 notice of termination even though it was aware Furmanite did not intend to pay the cancellation fee. The fact that Furmanite did not intend to pay the cancellation fee did not relieve NextCorp of its obligation to provide the hosting services until the termination date, nor did it place NextCorp under an obligation to remind Furmanite about the cancellation fee before it was due. *See Gray & Co. v. Atlantic Housing Found., Inc.,* 228 S.W.3d 431, 436 (Tex.App.-Dallas 2007, no pet.) (parties presumed as a matter of law to know contract's terms). The agreement did not require NextCorp to demand the cancellation before the termination date because the cancellation fee was not overdue until the cancellation date.

Furmanite also argues that NextCorp's failure to be "upfront" in January 2007 about the changing of the date of the Client Service Agreement prevented Furmanite from taking action to avoid the cancellation fee. Furmanite asserts that it could have terminated the agreement for cause, or it could have continued to use NextCorp's hosting services and avoided both the cancellation fee and the cost of moving the hosting services in-house. Furmanite does not explain why NextCorp was under an obligation to be "upfront" about the modification of the opening paragraph of the change orders. Furmanite was presumed to know the contract's terms. *See Gray & Co.,* 228 S.W.3d at 436. Nor does Furmanite explain how these assertions constitute waiver, equitable estoppel, or quasi-estoppel. We conclude that Furmanite has failed to raise a fact issue on its affirmative defenses of waiver and estoppel.

We overrule Furmanite's first issue as to NextCorp's no-evidence motion for summary judgment.

## Furmanite's Traditional Motion for Summary Judgment

In its second issue, Furmanite contends that the trial court erred in denying its motion for summary judgment.

### Amendment of Client Service Agreement's Term Through Change Orders

On appeal, Furmanite asserts "the Parties could not amend the CSA's term provision via a mere change order." Furmanite argues that the provisions of the Client Service Agreement setting forth the manner of amending the agreement provided that change orders were to amend only the scope of NextCorp's services; they were not to alter the general terms and conditions contained in the Client Service Agreement. However, Furmanite did not make this argument in the summary judgment proceedings in the trial court. A summary judgment may not be granted on grounds not presented in the motion, *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 204 (Tex.2002), but must "stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). Because Furmanite did not present this argument in the summary judgment proceedings below, the trial court could not grant Furmanite's motion for summary judgment on this ground.

Furmanite also argues the express language of the change orders stating, "any reference to the 'first year of the Agreement' contained in the CSA shall hereafter mean the first full year following the date inserted in the immediately preceding sentence," which was December 1, 2002, con-

clusively established that Furmanite did not owe the cancellation fee. Furmanite did not make this argument in the summary judgment proceedings, so Furmanite was not entitled to summary judgment on this ground. *McConnell*, 858 S.W.2d at 341. Also, as discussed above, the language in the opening paragraph of the change order about "first year of the Agreement" meaning the first full year following December 1, 2002 conflicts with the language in the same sentence that "[t]he date of the CSA is hereby amended to be August 31, 2006." Because of this ambiguity, Furmanite, like NextCorp, is not entitled to summary judgment based on the language of the opening paragraph. *Coker*, 650 S.W.2d at 394; *Hackberry Creek Country Club*, 205 S.W.3d at 56.

Furmanite also argues that the parties' conduct and course of dealing proves as a matter of law that the change orders could not amend the date of the Client Service Agreement or the length of its term. In its motion for summary judgment, Furmanite cited one case on this issue, *Strickland v. Coleman*, 824 S.W.2d 188 (Tex.App.-Houston [1st Dist.] 1991, no writ). In that case, following a trial before the court on a suit to enforce a promissory note, the trial court found that the parties' course of dealing established that the parties' contract was for the defendant—maker of the note to be liable for only half the face value of the note, not the entire amount as the note stated. *Id.* at 192–93. The decision in that case was based on the trial court's finding of fact concerning the disputed provisions of the parties' contract. Other case law indicates that evidence of parties' course of dealing may raise a fact question about the contract's terms, but the evidence does not establish those terms as a matter law. *See Domingo v. Mitchell*, 257 S.W.3d 34, 40 (Tex.App.-Amarillo 2008, pet. denied) (parties' course of dealing may raise fact question concerning parties' mutual agreement); *Double Diamond, Inc. v. Hilco Elec. Coop., Inc.*, 127 S.W.3d 260, 267 (Tex.App.-Waco 2003, no pet.) (same). Furmanite has not shown it established its right to summary judgment based on the parties' course of dealing.

*Amendment of Client Service Agreement Through Recitals in Change Orders*

Furmanite argues that, even if a change order could amend the term of the Client Service Agreement, the opening paragraph of the change order, as a matter of law, could not amend the agreement because it was a "recital paragraph." A "recital" is "[a] preliminary statement in a contract or deed explaining the reasons for entering into it or the background of the transaction, showing the existence of particular facts.... Traditionally, each recital begins with the word *whereas*." BLACK'S LAW DICTIONARY 1289 (8th ed.2004); *see McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Recitals in a contract are not strictly part of the contract, and they will not control the operative phrases of the contract unless those phrases are ambiguous. *Gardner v. Smith*, 168 S.W.2d 278, 280 (Tex.Civ.App.-Beaumont 1942, no writ) (quoting 17 C.J.S. *Contracts* § 314); *see City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 722 (Tex.App.-Fort Worth 2008, pet. dism'd) (quoting *Gardner*). "[W]here the recitals are broader than the contract stipulations, the former will not extend the latter." *Gardner*, 168 S.W.2d at 280 (quoting 17 C.J.S. *Contracts* § 314); *City of The Colony*, 272 S.W.3d at 722 (quoting *Gardner*).

The opening paragraph of the last change order states,

This Change order amends the existing Client Service Agreement (the "CSA")

between NextCorp, Ltd. ("NextCorp") and Furmanite Worldwide, Inc. ("Client") dated December 1, 2002. The date of the CSA is hereby amended to be August 31, 2006, and any reference to the "first year of the Agreement" contained in the CSA shall hereafter mean the first full year following the date inserted in the immediately preceding sentence. Unless otherwise provided herein, all terms, conditions and provisions of the CSA shall remain in full force and effect and apply equally to the provisions of this Change Order.

None of these provisions is a mere recital because none is "[a] preliminary statement in a contract or deed explaining the reasons for entering into it or the background of the transaction, showing the existence of particular facts." Instead, each statement is a substantive contractual provision controlling the parties' relationship.

Likewise, the former opening paragraph of the change orders was not a recital paragraph:

This Change order amends the existing Client Service Agreement (the "CSA") between NextCorp, Ltd. ("NextCorp") and Furmanite Worldwide, Inc. ("Client") dated December 1, 2002. This Change Order shall commence on or about October 25, 2004. Unless otherwise provided herein, all terms, conditions and provisions of the CSA shall remain in full force and effect and apply equally to the provisions of this Change Order.

Each statement in this paragraph is a substantive contractual provision.

We conclude that NextCorp did not amend the Client Service Agreement through "recitals" in the change order.

The trial court did not err in denying Furmanite's motion for summary judgment. We overrule Furmanite's second issue.

## CONCLUSION

We reverse the trial court's judgment to the extent it grants NextCorp's traditional motion for summary judgment, and we affirm the judgment to the extent it grants NextCorp's no-evidence motion for summary judgment and denies Furmanite's motion for summary judgment. We remand the cause to the trial court for further proceedings.